IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| AUDREY D. PRICE, | : |
| Plaintiff, | : |
| VS. | : Civil Action File No. |
| | : 3 : 09-CV-59 (CDL) |
| MICHAEL J. ASTRUE, | : |
| Commissioner of Social Security, | : |
| Defendant. | : |

## RECOMMENDATION

The Plaintiff herein filed an application for disability insurance benefits on May 9, 2005, alleging disability beginning July 24, 2000. The date last insured was December 31, 2005. The application was denied initially and upon reconsideration, and the Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on June 17, 2008. In a decision dated June 27, 2008, the ALJ denied Plaintiff's claim. The Appeals Council affirmed the ALJ's decision, making it the final decision of the Commissioner. The Plaintiff subsequently filed an appeal to this court. Jurisdiction arises under 42 U.S.C. § 405(g). All administrative remedies have been exhausted. This case is now ripe for review under section 1631(c)(3) of the Social Security Act, 42 U.S.C. § 1383(c)(3).

DISCUSSION

In reviewing the final decision of the Commissioner, this court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's factual findings are deemed conclusive if supported by

substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In reviewing the ALJ's decision for support by substantial evidence, this court may not re-weigh the evidence or substitute its judgment for that of the Commissioner. "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. "In contrast, the [Commissioners'] conclusions of law are not presumed valid....The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

20 C.F.R. § 404.1520 (1985) provides for a sequential evaluation process to determine whether a claimant is entitled to Social Security disability benefits. The Secretary employs the following step-by-step analysis in evaluating a claimant's disability claims: (1) whether the claimant is engaged in gainful employment; (2) whether claimant suffers from a severe impairment which has lasted or can be expected to last for a continuous period of at least twelve months; (3) whether claimant suffers from any of the impairments set forth in the listings of impairments provided in Appendix 1; (4) whether the impairments prevent claimant from returning to his previous work; and (5) whether claimant is disabled in light of age, education, and residual functional capacity. *Ambers v. Heckler*, 736 F.2d 1467, 1470-71 (11th Cir.1984). Should a person be determined disabled or not disabled at any stage of the above analysis, further inquiry pursuant to the analysis ceases. Accordingly, if a claimant's condition meets an impairment set forth in the listings, the claimant is adjudged disabled without considering age, education, and work experience. 20 C.F.R. § 404.1520(d).

The ALJ concluded that the Plaintiff had "severe" impairments of status-post cervical surgery, fibromyalgia, lumbar disc disease, seizure disorder, hypertension, depressions, and anxiety. However, the ALJ concluded that Plaintiff retained the residual functional capacity to perform sedentary work activity that is limited to lifting no more than 5 pounds; that requires only occasional balancing and stooping; limited by the need to avoid climbing ladders, ropes or scaffolds; that allows a sit/stand option, and that allows her to avoid extreme heat or cold. The ALJ found that Plaintiff was unable to perform her past relevant work (Tr. 18). However, based on testimony from a vocational expert witness, the ALJ determined that there was other work that Plaintiff could perform in the national economy including work as an eye glasses assembler, an information clerk, and a bench hand (Tr. 19, 311, 312).

Plaintiff was in a motor vehicle accident in 1989 which resulted in neck surgery on two occasions. (Tr. 176). These surgeries included bone grafting with bone taken from her hips, resulting in radiating pain in her right leg. (Tr. 176). During 1996, Plaintiff complained of worsening pain radiating down both her right and left legs; she sought treatment initially from her family physician, who used oral steroids and steroid injections to attempt to improve the condition. (Tr. 176).

After that she was referred to Dr. Ram Reddy for treatment. At that time, she was also being treated for headaches by a neurologist, for seizures, and for fibromyalgia. *Id.* Dr. Reddy performed a physical examination at that time, in September, 1996, which revealed multiple trigger points and reduced range of motion throughout the spine. (Tr. 178). Dr. Reddy diagnosed signs and symptoms consistent with her diagnosis of fibromyalgia, chronic migraines, chronic myofacial pain, possible premature osteoarthritis, rule out seronegative spondyloarthropathy. *Id.* Dr. Reddy recommended rest periods, strengthening exercises, use of topical treatments and heat, adjustment of medications

3

in consultation with other providers, and review of x-ray and laboratory results. (Tr. 179). The record also contains emergency room notations confirming severe migraines along with significant neck and back pain and spasm. (Tr. 188). An MRI was performed on the lumbar spine during 1996. Findings demonstrated an abnormal signal in the right iliac bone needing further evaluation. Gluteal atrophy was observed on the right side. (Tr. 158).

MRI records describe the Plaintiff's prior neck surgery as 1) posterior cervical spine fusion with wiring between C2, C3, and C4, and 2) anterior cervical fusion with screw and plate fixation at C5 and C6. (Tr. 157). The MRI also revealed anterior subluxation at C3-C4 of about one third of the vertebral body of C3. At C5-C6 there was a diffuse osteophyte formation causing mild canal stenosis. There was a severe degree of right sided C7 neuroforaminal narrowing. More fine detail was impossible due to the large amount of metal artifact from wires and screws. (Tr. 157).

Medical records from Janene Holladay, M.D., in 2000, indicate "marked pain behaviors" and pain on palpation in all locations. Range of motion was limited and painful in areas. Plaintiff was continued on Oxycontin by this doctor. (Tr. 190).

Records from Plaintiff's neurologist, Jerome Walker, M.D., from 2000-2002 demonstrate migraine headaches. (Tr. 191-200). Medical records indicate a history of severe headaches, which were unresponsive to a number of different medications; Imitrex did help but produced severe muscle spasms in the neck. (Tr. 137).

In August, 2000, the Plaintiff had a Certification of Health Care Provider completed by Willie Dolor, M.D., pursuant to the Family and Medical Leave Act, which confirmed the necessity of work absence plus treatment for recurrent severe low back and neck pain, recurrent severe headache, and fibromyalgia. Dr. Dolor indicated that he had seen the patient since 1991 and found her incapacitated by her conditions from 7/24/00 to that time, and she was found unable to return to

work at that time. (Tr. 201, 257). The doctor indicated that the claimant was being referred to a pain specialist, and would need several weeks to months of treatment; he gave no indication of when Plaintiff would be able to return to work. (Tr. 202). Dr. Dolor wrote again on Plaintiff's behalf on December 10, 2002, stating that his patient is not suited for gainful employment due to her disabilities. (Tr. 243).

A mental evaluation performed on August 16, 2005 by Stephen Hamby, Ph.D., revealed diagnoses of Mood Disorder due to physical problems, with depressive features, and Panic Disorder (provisional). (Tr. 337). The doctor felt the claimant's mental condition would improve if she received treatment, including medication if warranted. (Tr. 338).

A medical evaluation was performed by Ashok Kancharla, M.D., on August 23, 2005. He reviewed her medical history and performed physical assessments.(Tr. 339). He reported that he did not perform a range of motion evaluation of the extremities, but then reported full range of motion of fingers, wrists, elbows, shoulders, and cervical and lumbar spine. Trigger points were realized in three locations. (Tr. 341). Motor strength testing revealed weakness in the fingers of both hands. *Id.* X-rays revealed scoliosis, and narrowing of the L4-L5 and L5-S1 disc spaces. *Id.* The doctor assessed the claimant with hypertension, intervertebral disc degeneration, lumbosacral disc degeneration, scoliosis, epilepsies, and fibromyalgia. (Tr. 341).

On September 13, 2007, Dr. Kancharla completed a Medical Questionnaire on Ability to do Work Related Activities (Physical), as one of the claimant's family physicians at Tri County Medical Center. This practice includes the claimant's other two physicians, Dr. Ram Reddy and Dr. Willie Dolor. Dr. Kancharla, who had also earlier completed an assessment for social security purposes in 2005, reported specifically on the claimant's exertional and non-exertional limitations and medical findings in support. He concluded that the claimant could lift/carry 10

pounds or less occasionally, and less than 10 pounds frequently. He opined that her maximum ability to stand and walk would be about 3 hours, to sit about 4 hours, and that she must periodically alternate sitting, standing or walking to relieve discomfort about every thirty minutes. He further found that she would need to walk around every thirty minutes for about thirty minutes, and would need to shift at will from sitting to standing/walking. (Tr. 394). He further limited her to only occasional twisting, stooping or crouching, with no climbing stairs or ladders, and stated that she is limited in her ability to reach, and in fine and gross manipulation. *Id.* Overall, he found that she would likely be absent from work two times per month due to her limitations. (Tr. 395).

*Credibility*

Plaintiff states that the ALJ erred in assessing her credibility and subjective complaints. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991), requires that an ALJ apply a three part "pain standard" when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. A claimant may establish that her pain is disabling through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce the pain.

20 C.F.R. S 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability. *Foote v. Chater*, 67 F.3d 1553,1560-1561 (11th Cir. 1995).

A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability. *Holt v. Sullivan*, supra at page 1223; *Hale v.*

*Bowen*, 831 F.2d 1007, 1011 (11th Cir.1987). Where the claimant's testimony is critical, the fact finder must articulate specific reasons for questioning a claimant's credibility. "[D]isregard of such complaints without articulating the reason is inappropriate because it deprives the reviewing court of the ability to determine the validity of that action. When rejecting the credibility of a claimant's testimony, an ALJ must articulate the grounds for that decision." *Caulder v. Bowen*, 791 F.2d 872, 880 (11th Cir.1986). The ALJ may consider the nature of a plaintiff's symptoms, the effectiveness of medication, a plaintiff's activities, and any conflicts between a plaintiff's statements and the rest of the evidence. See 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4).

Plaintiff testified as to her limitations. She stated that her sleep is disturbed by pain and muscle spasms. (Tr. 109). She cannot perform many household chores, and does laundry only by taking rest breaks along the way. (Tr. 109-110). Her memory has been impaired; she needs reminders to take her medicine. (Tr. 110). She no longer cooks actual meals, relying on frozen dinners and sandwiches, or on her boyfriend to cook. *Id.* Some days she stays in bed all day due to her fibromyalgia. (Tr. 109). All postural and exertional abilities are affected by her back and neck pain and fibromyalgia, and her memory, concentration, and ability to complete tasks is impaired. (Tr. 113). Plaintiff's boyfriend, William Mason, described her as very limited, as well as forgetful. He said she is restless all night long, crying from the pain in her neck, back, legs and feet. (Tr. 117). He said it is difficult for her to shower, do her hair, and that he will shave her legs for her. *Id.* He said he worries about leaving her alone in the kitchen because she is forgetful, drops things often, and he is concerned she may have a seizure. (Tr. 118). It takes her twice as long to complete tasks as it would another person. (Tr. 118-119).

The ALJ found that Plaintiff met the pain threshold in that her impairments could reasonably cause her pain, but did not find her statements concerning the severity of her symptoms and their

limiting effects credible (Tr. 22). The ALJ then offered several reasons for finding those statements not credible including the lack of objective medical evidence and diagnostic tests confirming the severity of her alleged symptoms; the type of treatment she was prescribed for her symptoms; and her non-compliance in taking her medications and following doctor recommendations (Tr. 22-24). *See Foote v. Chater*, 67 F.3d 1553, 1560-62 (11 Cir. 1995).

Plaintiff asserts that the ALJ appeared to require objective medical evidence to substantiate her claims of a totally disabling condition. Plaintiff states that requiring this kind of objective evidence regarding her "severe" impairment of fibromyalgia was error.

The "hallmark" of fibromyalgia is the lack of objective evidence; it is a condition "which often lacks medical or laboratory signs, and is generally diagnosed mostly on an individual's described symptoms." *Moore v. Barnhart,* 405 F.3d 1208, 1211-12 (11th Cir. 2005). A treating physician's testimony can be particularly valuable in fibromyalgia cases, where the objective evidence is often absent. *Id*.

The Commissioner asserts that the ALJ here did not just rely on a lack of diagnostic or laboratory tests in finding Plaintiff's complaints of severe pain not credible, but also relied in large part on the lack of treatment notes reflecting that Plaintiff appeared to be in any pain or distress during her medical evaluations (Tr. 22-23).

The ALJ found that the

> objective medical evidence does not document factors indicative of the intense, protracted and disabling nature which the claimant alleges, such as persistent and significant weight loss, muscle wasting, muscle atrophy or weakness, significant limitation of motion, neurological deficit or other objective, observable findings often associated with pain of the intense nature reported by the claimant.

(Tr. 22).

While this conclusion may be correct with regard to Plaintiff's other "severe" impairments, it is

difficult to make that conclusion regarding Plaintiff's fibromyalgia, as the ALJ did not discuss that impairment other than to note the diagnosis of it. It is difficult to determine from the ALJ's decision whether he was discussing the other impairments in noting the lack of objective medical findings, or whether he intended to include fibromyalgia in the discussion of objective medical findings. If the ALJ meant to conclude that Plaintiff was not disabled because of the lack of objective medical findings regarding her fibromyalgia, that clearly would be error.

Because the decision is unclear regarding the findings of limitations caused by fibromyalgia, remand for further consideration of the condition, Plaintiff's testimony regarding the limitations caused by her fibromyalgia, and consideration of the medical opinions regarding fibromyalgia contained in the record is necessary.

*Treating Physicians*

Plaintiff states that the ALJ erred in failing to assign great weight to the opinions of her treating physicians.

The regulations at 20 C.F.R. § 416.927(d) provide specific criteria for evaluating medical opinions from acceptable medical sources: (1) examining relationship; (2) treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. Additionally, the Eleventh Circuit has held that the testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause" exists when the "(1) treating physician's opinion is not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Lewis*, 125 F.3d at 1440).

Plaintiff states that the ALJ improperly discounted the opinions of Dr. Dolor. In an opinion

9

dated August 21, 2000, Dr. Dolor stated to the U.S. Department of Labor that due to Plaintiff's back and neck pain, headaches, and fibromyalgia, she could not return to work and was unable to perform the functions of her job "at present," but gave no indication of when she would be able to return to work. (Tr. 201-03; Pl.'s Br. at 14). Dr. Dolor's treatment notes from earlier in the month noted that the Plaintiff was going to be given "short term disability" (Tr. 266). The second opinion is in a letter dated December 10, 2002, in which Dr. Dolor stated he did not believe that Plaintiff could work gainfully. (Tr. 243; Pl.'s Br. at 14). The third opinion cited by Plaintiff is an undated document filled out by Dr. Dolor, stating that Plaintiff was "unable to work" since July 2000 and noting that she had a "Total Disability" since that date (Tr. 257; Pl.'s Br. at 14).

The ALJ, in deciding to discount the opinion of Dr. Dolor, interpreted the opinion of Dr. Dolor as reporting that Plaintiff

> was on short-term disability from August 17, 2000 through August 25, 2000, and that it was not until December 10, 2002, that he opined that the claimant was unable to be gainfully employed. At that time, he did not explain how her symptoms had worsened and failed to address the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled. In addition, it appears that Dr. Dolor relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and not objective medical evidence when forming his opinion. For these reasons, his opinion is given little weight.

(Tr. 24).

The undersigned has reviewed the statements and records of Dr. Dolor. While Dr. Dolor's treatment notes from August 2000 indicate that Plaintiff was going to be given short term disability, Dr. Dolor also noted that "hopefully, her condition will improve with further treatment." (Tr. 266). Dr. Dolor did not indicate an end date to her short term disability, and he did not release her back to work at any time.

The undersigned agrees with Plaintiff that the ALJ mischaracterized Dr. Dolor's opinion. His August 21, 2000 statement was a snapshot of Plaintiff's condition at that time, detailing the need for

Plaintiff to have further treatment regarding her pain. At no time did Dr. Dolor state that Plaintiff would be able to return to work on a date certain. In fact, at no time did he release her to go back to work. Therefore, his December 2002 letter, contrary to the conclusion reached by the ALJ, is not inconsistent with his 2000 opinion. Dr. Dolor never stated that Plaintiff would be able to go back to work, so the requirement placed by the ALJ for Dr. Dolor to explain the difference between his 2000 opinion and his 2002 opinion regarding Plaintiff's ability to go back to work is not based upon substantial evidence. It was therefor error for the ALJ to discredit the opinion of Dr. Dolor on this basis.

It was also error for the ALJ to discount the opinion of Dr. Dolor regarding Plaintiff's limitations resulting from fibromyalgia. The ALJ appeared to discount the opinion in part because of a lack of objective medical findings, a reliance on Plaintiff's subjective complaints of symptoms, and a lack of "clinical and laboratory abnormalities one would expect if the claimant were in fact disabled." (Tr. 24). As explained above, fibromyalgia is a medical condition in which objective clinical and laboratory findings are rare. Requiring such objective findings without discussion of other evidence in the record regarding fibromyalgia was error. The lack of objective clinical findings is, at least in the case of fibromyalgia, insufficient alone to support an ALJ's rejection of a treating physician's opinion as to the claimant's functional limitations. *Green-Younger v. Barnhart,* 335 F.3d 99, 105-108 (2d Cir.2003); *Somogy v. Commissioner of Social Security*, 366 Fed.Appx. 56 (11th Cir. 2010).

Upon remand, the ALJ should re-evaluate the opinion of Dr. Dolor, re-evaluate Plaintiff's limitations caused by fibromyalgia, and re-evaluate Plaintiff's credibility consistent with the above analysis. Further testimony from a Vocational Expert may be required.

*Hypothetical*

Plaintiff argues that the ALJ failed to pose a proper hypothetical question to the VE since

11

he failed to include the limitations opined by Dr. Kancharla and limitations that Plaintiff's memory was impaired and she had difficulty concentrating.

The ALJ is not required to include Plaintiff's unsupported allegations in his hypothetical question, nor is he required to accept the VE's testimony in response to hypothetical questions that included Plaintiff's unsupported allegations. See *Wilson*, 284 F.3d at 1227; *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999); *Graham v. Bowen*, 790 F.2d 1572, 1576 (11th Cir. 1986); see also *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (ALJ is only required to include the restrictions he recognizes in his hypothetical question to the VE).

Of course, on remand, the ALJ will need to consider whether the application of the factors discussed herein as to credibility and the opinions of Plaintiff's treating physicians might or might not change the hypothetical and any corresponding VE testimony.

*Conclusion*

Inasmuch as the Commissioner's final decision in this matter is not supported by substantial evidence, it is the RECOMMENDATION of the undersigned that the Commissioner's decision be **REVERSED AND REMANDED** pursuant to Sentence Four of § 405 (g) for further consideration in light of this opinion. Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable Clay D. Land, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy.

**SO RECOMMENDED**, this 16th day of August, 2010.

S//Thomas Q. Langstaff
THOMAS Q. LANGSTAFF
UNITED STATES MAGISTRATE JUDGE

msd